Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807-7051
406-721-1435
tim@bechtoldlaw.net

Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| UNITED STATES OF AMERICA, | ) | CR 23-91-BLG-SPW |
|---|---|---|
| Plaintiff, | ) ) ) ) | DEFENDANT'S SENTENCING MEMORANDUM |
| vs. | ) ) | |
| JOSEPH JOHN SIMPSON, | ) ) | |
| Defendant. | ) | |

Defendant Jospeh Simpson has entered a guilty plea to the charge of possession with intent to distribute, Count 2 of the indictment in this case. The Final PSR calculates Mr. Nestegard's total offense level as 37 and criminal history category III, with a resulting advisory guideline range of 262-327 months. The charge carries a mandatory minimum sentence of 10 years. In return for dropping Count 3, the firearm possession charge, the plea agreement allows for a 2-level enhancement under §2D1.1(b)(1). Doc. 24 at 6.

The draft PSR calculated Mr. Simpson's total offense level as 35, criminal history category III, with a resulting advisory guideline range of 210-262 months. Defendant provided the following objection to the draft PSR:

> Mr. Simpson was interviewed by SA Berry and SA Lowe on July 14, 2023, at St. Vincent's in Billings. During the interview, Mr. Simpson provided information to the agents after a waiver of his rights. Although Mr. Simpson eventually informed the agents that he would provide no further information without an attorney present, I think the interview should be considered a §1B1.8 interview and information from the interview should not be considered for calculation of guidelines. Therefore the additional two pounds you add to Mr. Simpson's drug total should not be included. Rather, his guidelines should be determined on the 843.16 grams that were in his possession when he was stopped. Therefore his base offense level should be 34, for 500 to 1500 grams, with a resultant total offense level of 33.

The government also objected, arguing that Mr. Simpson's drug amount should be increased based upon the testimony of other witnesses and Mr. Simpson's comments during the post-arrest interview with SA Berry and SA Lowe. The USPO agreed with the government and increased Mr. Simpson's drug amount and consequent total offense level to 37 in the final PSR.

A defendant can be held responsible for drug quantities involved in his "relevant conduct," which may include the defendant's own acts as well as the acts of others. *See* USSG §1B1.3. The sentencing guidelines hold the defendant accountable for the "reasonably foreseeable" acts and omissions of others in furtherance of "jointly undertaken criminal activity," which includes any "criminal

plan, scheme, endeavor or enterprise undertaken by defendant in concert with others, whether or not charged as a conspiracy." USSG §1B1.3(a)(1)(B).

Here Mr. Simpson was apprehended with 843 grams of methamphetamine, roughly two pounds. Based on the proffers of other drug dealers, including Virgilio Arciga-Galvan, Frederica Lefthand, Daniel Jimenez-Chavez, and Jeffrey Prettypaint, and Mr. Simpson's own statements in his interview, the USPO decided to increase the relevant drug amount for sentencing to roughly 9.9 pounds, or 4.5 kilos, which is the trigger amount for Level 38.

Defendant asked the USPO to disregard Mr. Simpson's statements in the interview with the agents, and consider the statements protected similar to statements as protected under §1B1.8. The government strenuously responded that §1B1.8 protections should not apply because Mr. Simpson was not offered such protections and did not invoke an attorney request until later and only in conjunction with his phone, and even then voluntarily unlocked his phone for the agents. Just prior to the interview, Mr. Simpson had been administered narcotic pain relief medication at St. Vincent's Hospital for a perforated ulcer. His manner and behaviorisms during the interview are similar to an intoxicated person's manner and behavior. His speech is often slurred and often unintelligible, and he is slouched back in his chair through most of the interview. While it is true that Mr. Simpson was not offered §1B1.8 protections prior to the interview, the agents knew that Mr. Simpson had been given pain medication just prior to the interview

and knew he was under the influence of the pain medication during the interview. The defense believes that the government should not be allowed to rely on any statements provided by Mr. Simpson during the interview because Mr. Simpson provided the interview while he was medicated and not in full control of his faculties.

Section 3553(a) of Title 18 of the United States Codes states "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Court is to consider the need for the sentence imposed:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, the Court shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (4) and (5) the kinds of sentence and the sentencing range established by the sentencing guidelines and policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide

restitution to any victims of the offense.

The Sentencing Commission has not fixed the disparities in the offense levels between actual meth and substances including meth to account for the purities of meth now common on the street. Mr. Simpson therefore asks the Court to apply a waiver of four levels to reflect reality and to account for this historical inequity that the Commission has not yet adjusted. Particularly when the comparison between actual meth and a substance containing meth is ten times the actual meth amount (*viz.* Level 38: 45 kilos of substance containing meth vs. 4.5 kilos of actual meth), application of historical purity levels create a disparate result in the advisory guidelines. A four-level reduction would put Mr. Simpson at total offense level of 33, with an advisory guideline range of 168-210 months.

The sentencing guidelines and policy allow for a great amount of discretion when it comes to sentencing. Here, as the PSR sets out, Mr. Simpson was "one hell of an employee" and would be welcomed back to employment. PSR ¶74. He has been a hardnosed guy in a rough reservation environment, but Mr. Simpson is not a hardened criminal. He is a drug addict. His criminal history is dominated by drug-related crimes. A guideline sentence of 262 months in this case is unreasonable. As the USPO notes in the PSR addendum, similarly-situated individuals in the United States in the last five years received an average sentence of 170 months and the median prison term was 180 months. Mr. Simpson was apprehended with 843 grams of meth. That is an amount sufficient to put him in prison for more than 10

years. He has accepted responsibility and admits his guilt. In the end, Mr. Simpson is an average meth dealer, and should receive an average sentence: 170 months.

A sentence of 170 months serves the purposes of §3553(a) while allowing Mr. Simpson to get treatment for his addictions. Lengthy sentences been shown to have no impact on an individual's tendency to reoffend. *See* https://www.pewtrusts.org/-/media/legacy/uploadedfiles/wwwpewtrustsorg/reports/sentencing_and_corrections/prisontimeservedpdf.pdf. Moreover, individuals tend to quickly "age out" of their high crime years. *See* https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.  As of December 2023, 66% of the federal prison population was 36 years old or older, and nearly one in five individuals were over 50, well above the ages most at risk for crime. *See* https://www.bop.gov/about/statistics/statistics_inmate_age.jsp. Mr. Simpson is 49 years old. With a sentence of 170 months, depending on good time credits and reductions for treatment programs, he will be about 63 years old upon release. Simply put, there is a vast chasm of diminishing returns and mounting liabilities to the people of the United States to incarcerate Mr. Simpson any longer than 170 months, the national average of similarly-situated individuals, regardless of age of the offender.

Dated this 12th day of January, 2024.

/s/Timothy M. Bechtold
Attorney for Defendant