**BRYAN T. DAKE**
**JULIE R. PATTEN**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**James F. Battin U.S. Courthouse**
**2601 Second Ave. North, Suite 3200**
**Billings, MT 59101**
**Phone:      (406) 657-6101**
**FAX:         (406) 657 6989**
**E-mail:      Bryan.Dake@usdoj.gov**
**                   Julia.Patten@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 23-91-BLG-SPW** |
| **Plaintiff,** | |
| **vs.** | |
| **JOSEPH JOHN SIMPSON,** | **SENTENCING MEMORANDUM** |
| **Defendant.** | |

## INTRODUCTION

Joseph John Simpson has pled guilty to possession with intent to distribute

methamphetamine for his role in trafficking methamphetamine. Simpson is one of

1

approximately two dozen defendant related to a large-scale drug trafficking

organization centered on the Crow and Northern Cheyenne Indian Reservations,

known colloquially as "Spear Siding." Simpson was one of Spear Siding's best

customers. Simpson was heavily involved with obtaining methamphetamine from

Spear Siding and distributing it in Lame Deer. The government requests a period

of 264 months imprisonment, followed by five years of supervised release.

## OBJECTIONS

The defendant maintains an objection to the use of his statement in the

guideline calculation pursuant to USSG § 1B1.8. Simpson's statement is not a

protected statement under USSG § 1B1.8 and the government is permitted to use

the material gained from that interview in support of the drug weight attributable to

the defendant. Further, late in the interview Simpson stated he should talk to a

lawyer before giving consent to search his phone. But he then agreed to the search

and the statements made following this are not significant for drug weight

consideration.

Under USSG § 1B1.8(a), a defendant who agrees to cooperate with the

government concerning unlawful activities can have their statement protected from

use in determining the guideline. However, a significant component of is a

cooperation agreement. USSG § 1B1.8(a) provides that "as a part of that *cooperation agreement* the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant…" No such representation was made here. He was not provided immunity nor told the statements would not be used against him. In fact, the opposite is true. Simpson was interviewed in custody following his arrest on July 14, 2023. At the beginning of the interview Simpson was provided his *Miranda* rights from the agents, acknowledged he understood those rights, waived his *Miranda* rights, and agreed to speak to agents. He proceeded to tell agents all about his drug trafficking activities, including the amounts he obtained and sold, as well as provided information as to his affiliations with others. Simpson was later asked if he would consent to search of his phone and Simpson stated "Now, that I will talk to a lawyer about." The agent then attempted to clarify by asking Simpson if he wanted an attorney present from that point forward in the interview and Simpson said, "well I already pretty much sunk myself." As they attempted again to clarify with Simpson about his phone, Simpson said "you guys can have it." Agents again clarified if Simpson was ok with them taking his phone and searching the entire thing and he agreed. The questions posed after he this did not relate to drug weight and have no bearing on the guideline calculation.

The significant information that Simpson gave to law enforcement was made prior to any perceived invocation his right to counsel and the information after his statements regarding a lawyer are not pertinent to the calculation of the attributable weight under the guidelines. Therefore, given there was no immunity given to Simpson, the statement is not protected under USSG § 1B1.8, and any information gleaned following the perceived invocation of rights was not used in determining the guideline weight attributable to him.

## ARGUMENT

The Court shall impose a sentence "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a) (2018). Determining a "sufficient, but not greater than necessary" sentence requires the Court to consider the following factors:

- seriousness of the offense;

- respect for the law;

- just punishment for the offense;

- adequate deterrence in relation to the criminal conduct;

- protecting the public from further crimes of the defendant; and,

- providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Additional considerations for the Court when imposing an appropriate sentence include: the nature and circumstances of the offense, the history and characteristics of the defendant, and the kinds of sentences available. *Id.* § 3553(a)(1), (3). The Court should similarly consider the sentencing guidelines and policy statements, as well as "the need to avoid unwarranted sentencing disparities." *Id.* § 3553(a)(4), (5), (6). Finally, the Court should consider "the need to provide restitution to any victims of the offense." *Id.* § 3553(a)(7).

The government recommends a sentence of 264 months imprisonment, five years of supervised release, and a $100 special assessment.

Joe Simpson was involved in a multi-state drug trafficking organization centered on two properties on the Crow Indian Reservation, including one referred to as Spear Siding. PSR ¶ 10. For each defendant, the government intends to provide the Court with a clear understanding of the specific defendant's involvement in the offense and how their conduct impacted the entirety of the conspiracy. Simpson is appropriately considered towards the top of the conspiracy. Simpson was considered the "best client" of the organization, was a "top dealer" of

methamphetamine on the Northern Cheyenne Reservation, and sourced other dealers. PSR ¶¶ 12, 15, 19. Simpson is responsible for the distribution of almost ten pounds of methamphetamine. PSR ¶ 21. While there are certainly co-conspirators who are more culpable, Simpson was integral to the operation, partially because he made sure his sources got paid, and he has a significant criminal history.

As an initial matter, the distribution of methamphetamine is crippling communities, including the Indian reservations. It is an offense against society as a whole and the mere existence of methamphetamine is detrimental. Indian country is disproportionately impacted by the devastation of methamphetamine, targeted by drug traffickers wanting to exploit these people struggling with severe addiction and abject poverty. This Court is unfortunately familiar with the lasting impacts of methamphetamine, including the addiction-related issues plaguing users and the number of violent offenses rooted in methamphetamine use. To say it is victimless does not properly account for the collateral victims impacted: "Methamphetamine … is destroying lives, breaking up families, and undermining tribal cultures." Christopher B. Chaney, *Overcoming Legal Hurdles in the War Against Meth in Indian Country,* 82 N.D.L. Rev. 1151 (2006). It ruins the lives of users and everyone around the user (including spouses, parents, siblings, and children).

Simpson's conduct in this case was no exception. He preyed upon his people by putting this poison in the community in which he lived.

The seriousness of the defendant's conduct in this case is clear from his station as a "top dealer" on Northern Cheyenne, who was sourced by Spear Siding, and was involved with only the most culpable individuals in the organization. Simpson has made a career at selling drugs and has apparently been mildly successful considering he was one of the few of Spear Siding's customers who always paid in large sums of cash. PSR ¶ 12. He was obtaining pound quantities from Spear Siding and selling it to other dealers and addicts on the reservation. But even when Spear Siding was shut down, Simpson was able to find a new source of supply to stay in the game. When Simpson was arrested, following a high-speed pursuit with law enforcement, he was found in possession of two pounds of meth, $9,000 in cash, and four firearms, including an Uzi submachine gun. PSR ¶¶17, 18. A subsequent interview with Simpson revealed the $9,000 was drug proceeds. PSR ¶ 19. Distributing methamphetamine on its own is serious conduct deserving of serious punishment, but the addition of the use of a firearm makes it even more egregious.

Simpson's guideline range is accurately calculated and a sentence within this range is sufficient but not greater than necessary. He is held accountable for almost

ten pounds of methamphetamine, perhaps a conservative number, and receives an

enhancement for his possession of multiple firearms resulting in a total offense

level of 37. This accurately accounts for his conduct in this case.

Simpson's criminal history further drives the guideline range as he is a

criminal history category of III with six criminal history points. PSR ¶ 52. Simpson

has three prior felonies and has been deemed a persistent felony offender by the

State of Montana. PSR ¶¶ 47, 49, 50.

The Court should avoid unwarranted sentencing disparities in determining

an appropriate sentence. As noted above, Simpson is a higher-level individual as a

part of this conspiracy. For the Court's reference, the table below includes all of

the individuals affiliated with this investigation and the sentences they received.

The most similarly situated defendant to Simpson is Roderick Plentyhawk,

although Plentyhawk was held accountable for an additional enhancement

(leader/organizer), had a higher criminal history, but both were involved in

significant amount of drug weight from Spear:

| Defendant | Case Number | CHC | Guideline Range | Sentence |
|-----------|-------------|-----|-----------------|----------|
| Hailey James | CR-23-37-BLG-SPW | I | 30-37 | Time served |
| Keilee Diaz | CR 23-41-BLG-SPW | I | 24 to 30 months | 12 months + 1 day |
| Adrienne Laforge | CR-23-38-BLG-SPW | III | 30-37 | 24 months |
| Renita Redfield | CR 23-41-BLG-SPW | III | 70 to 87 months | 63 months |
| Nancy Hartsock | CR 23-69-BLG-SPW | V | 100 to 125 months | 72 months |
| Carly James | CR 23-41-BLG-SPW | III | 135 to 168 months | 84 months |
| Darlon Lefthand | CR 23-41-BLG-SPW | III | 120 to 135 months | 84 months |

| Roderick Plentyhawk | CR-23-41-BLG-SPW | IV | 360-life | 300 months |
|---|---|---|---|---|

A sentence imposed by the Court should also provide adequate deterrence. Simpson's conduct is very serious, and a sentence of incarceration serves to deter him and the general public from engaging in this conduct. While general deterrence is not always present in drug offenses, it is certainly present here as individuals who engage in the sale of drugs on reservations, such as the Crow Indian Reservation and Northern Cheyenne Indian Reservation, should understand that such dealing will eventually lead to federal prison and years of supervised release.

The government believes a sentence of 264 months incarceration and five years of supervised release adequately addresses all sentencing considerations and is sufficient, but not greater than necessary.

DATED this 12th day of January, 2024.

JESSE A. LASLOVICH
United States Attorney

*/s/ Bryan T. Dake*
BRYAN T. DAKE
Assistant U.S. Attorney

*/s/ Julie R. Patten*
JULIE R. PATTEN
Assistant U.S. Attorney